**STATE ex rel. LAFAYETTE COUNTY COMMISSION, et al., Relators,**

v.

**Honorable Robert RAVENHILL, Judge, 15th Judicial Circuit, Respondent.**

No. 71301.

Supreme Court of Missouri, En Banc.

Sept. 8, 1989.

Weldon W. Perry, Jr., Lexington, for relators.

Robert L. Rasse, Marshall, for respondent.

RENDLEN, Judge.

We issued our preliminary rule in prohibition on the contention of the Lafayette County Commission and Lafayette County Prosecuting Attorney that respondent, after the passage of more than six months, was without jurisdiction to amend a final judgment of forfeiture allocating funds pursuant to the Criminal Activity Forfeiture Act (CAFA), §§ 513.600 to 513.-645, RSMo 1986. This cause falls within the ambit of this Court's jurisdiction pursu-

ant to Mo. Const. art. V, § 4,[1] and our preliminary rule in prohibition is now made absolute.

The funds in question here are part of a $635,420 sum seized during a narcotics arrest in Lafayette County, upon which the Lafayette County Prosecuting Attorney, after conviction of the defendants in that action, instituted a forfeiture proceeding entitled *State vs. Keith Weakley and Kermit Williams*, Cause No. CV188–101CC, under the authority of § 513.607, RSMo 1986. The statute provides that property used in connection with criminal activity may be subject to a civil forfeiture proceeding instituted by the prosecuting attorney of the county in which the property was seized. On June 29, 1988, the Honorable William Bellamy, then judge of the Circuit Court of Lafayette County, entered a judgment of forfeiture in the cause declaring that the entire sum was *"forfeited to Lafayette County*, Missouri for deposit in a special fund or forfeiture account to be allocated, and thereafter distributed (emphasis added)"* to the following:

(1) 25% to the *Lafayette* County Crime Fund, which had been established by Resolution 87–1–13 of the Lafayette County Commission and was to be used by the *Lafayette* County Sheriff or Prosecuting Attorney to pay costs of "criminal investigations, victim-witness services, or other matters reasonably related to the functions and duties of those respective offices." Resolution 87–1–13 had further provided that withdrawals from the crime fund were permitted upon the signatures of at least two of the authorized signatories, who were the Presiding Commissioner, the Prosecuting Attorney, and the Sheriff.

(2) 25% to the Missouri Highway Patrol, Troop A;

(3) 10% to the *Lafayette* County Prosecuting Attorney's Office;

(4) 40% to the various municipal police departments in *Lafayette* County.[2]

The Superintendent of the Missouri State Highway Patrol, however, determined that the highway patrol should not participate in the CAFA account and should relinquish its portion to the Lafayette County Crime Fund. Therefore, on December 22, 1988, the superintendent wrote a letter to the Lafayette County Prosecuting Attorney, who as stated above was a county officer authorized to use the monies in the crime fund and was a designated signatory on its account. This letter purported to yield to the Lafayette County Crime Fund the highway patrol's rights in the proceeds, yet the superintendent expressed the highway patrol's keen interest in obtaining funding for equipment to perform DNA testing in its laboratory. The superintendent concluded, "I am hopeful that you and the court will conclude that this is a proper use of the Lafayette County CAFA forfeiture funds and will provide the equipment through a Deed of Gift as we previously discussed."

Upon receipt of the highway patrol superintendent's letter, the Lafayette County Prosecuting Attorney was at first unsuccessful in convincing the county treasurer to transfer the funds to the crime fund, for the treasurer had received contrary instructions from the county auditor. The prosecutor, however, then submitted a written request to the Lafayette County treasurer and auditor to execute the transfer of funds from the highway patrol to the crime fund, stating that the superintendent's letter was effective as an assignment of the funds to the crime fund "and does not need or require any further court orders or di-

---

**1.** Though relators have not first filed their petition in a lower court as required by Rule 84.22, this rule is procedural rather than jurisdictional, and we have in some instances such as this waived compliance with the rule. *State ex rel. Commissioners of the State Tax Commission v. Schneider,* 609 S.W.2d 149, 151 (Mo. banc 1980).

**2.** Judge Bellamy expressly relied upon § 513.620(2) and (6), which provides that:

The court *may after judgment of forfeiture* make any of the following orders for disposition of the property:
... (2) Retention for official use by any agency of this state or any political subdivision thereof;
... (6) Any other disposition of the property as may be provided by the laws of this state which is in the interest of justice and adequately protects innocent parties.
(Emphasis added.)

rectives to effectuate the transfer." Acting under direction of the Lafayette County Commission, the county treasurer transferred the funds from the highway patrol's CAFA account to the crime fund on January 9, 1989.

However, on January 10, his first day sitting as circuit judge, respondent (who succeeded Judge Bellamy) on his own initiative and without notice to any interested party of record entered an amended order of forfeiture which revoked the previous order with respect to the allocation of funds to the highway patrol, accepted the voluntary return of the funds by the patrol, and allocated them instead to the Saline County Commission to be deposited in that county's "Juvenile Law Enforcement" Account. Quite interestingly the creation of that account had occurred earlier that same day by resolution of the Saline County Commission to be "maintained and used by the Saline County Commission for official juvenile law enforcement purposes and related juvenile rehabilitation purposes." The authorizing resolution further required that "the Saline County Commission accept for deposit into said Fund all moneys allocated and ordered distributed to the Saline County Commission by order of the Circuit Court of Lafayette County, Missouri, ... Cause No. CV188–101CC, entitled State of Missouri ex rel. Missouri State Highway Patrol, Plaintiff vs. Keith Weakley and Kermit Williams, Defendants." Thus, with a remarkable display of omniscience, the Saline County Commission had only hours or moments before provided for funding of its new Juvenile Law Enforcement Fund with monies to be allocated to it in the forfeiture proceeding at bar, even though Saline County was not to be a recipient of such funds under the original judgment of forfeiture and respondent had not yet "amended" that judgment entered more than six months earlier.

■■■ We agree with relators' contention that respondent lacked jurisdiction to amend the judgment of forfeiture, for the language of the Criminal Activity Forfeiture Act indicates the judgment entered by Judge Bellamy in this forfeiture proceeding was a final judgment. Section 513.607.2 states that civil forfeiture proceedings are to be governed by the Missouri rules of civil procedure, which would include the rules as to finality of judgments. The express language of the statute makes clear that rules regarding the finality of judgments are applicable to judgments entered in forfeiture proceedings. For example, § 513.610, subsections 2 and 3, govern disposition of the property "pending *final judgment* in the forfeiture proceeding (emphasis added)," and § 513.615 provides that innocent parties, defined as those who did not have actual knowledge that the property was connected with criminal activity, may "intervene in the forfeiture proceeding *prior to its final disposition* (emphasis added)." Finally, § 513.620 states that "the court *may after judgment of forfeiture* make ... *orders for disposition of the property*" in the manner provided therein (emphasis added). It is apparent from the statute that the legislature intended that the trial court may enter a judgment of forfeiture, which would be final for purposes of appeal, and *thereafter* in the same proceeding make appropriate orders for the disposition of the property. While it may reasonably be argued that the trial court might for some reasonable purpose delay its entry of "orders for disposition of the property," in the case at bar the trial court unequivocally entered judgment of forfeiture to Lafayette County, and immediately thereafter provided for allocation of the property by officers of that county.

Our rules of court, expressly made applicable to such forfeiture proceedings by § 513.607.2, state that the trial court retains control to vacate or amend its judgment, upon notice and opportunity to be heard, for thirty days after entry of judgment. Rule 75.01. They further provide that a judgment becomes final at the expiration of thirty days after entry of judgment if no motion is made for a new trial. Rule 81.05(a). In this case it is undisputed that no post-judgment motions were filed by any party, and respondent's purported amended order was entered on his own volition long after the thirty-day period following entry of the final judgment. We

therefore conclude that respondent was without jurisdiction to enter the amended order of forfeiture, thus it is void and to be stricken, and respondent is hereby prohibited from enforcing such order or making further amendment to the original order. *See State ex rel. Berbiglia, Inc., v. Randall,* 423 S.W.2d 765 (Mo. banc 1968). *See also, e.g., Riek v. Riek,* 708 S.W.2d 826, 828 (Mo.App.1986); *General Motors Acceptance Corp. v. Thomas,* 694 S.W.2d 514, 516–17 (Mo.App.1985).

■ Respondent argues that the letter of the highway patrol superintendent was ineffective as an assignment to the crime fund, but we need not analyze the issue in those terms. The original judgment forfeited the funds to *Lafayette County* for deposit in the forfeiture fund to be allocated as specified above. This disposition was authorized by § 513.620(2), which provides that forfeited funds may be retained for official use by any official agency or political subdivision of the state, and the funds in question at no time left the possession of Lafayette County, though they had been allocated for the use and benefit of highway patrol Troop A. By means of the letter, the highway patrol definitively relinquished its right to the proceeds, though expressing a desire that they be allocated to the crime fund, and Lafayette County had maintained control of the funds since entry of the final judgment. As the highway patrol did not accept the funds allotted to it, we conclude the Lafayette County Commission was possessed of the authority to order the county treasurer to appropriate the funds to that county's crime fund.

■ On careful examination of Judge Bellamy's order of June 29, 1988, it is clear that the judgment was intended as a final appealable order. The monies were ordered "forfeited to Lafayette County" to be deposited in Lafayette County's "special fund" or "forfeiture account," and Lafayette County was charged with distribution of the funds to the Lafayette County Crime Fund, the Missouri State Highway Patrol, Troop A; the Lafayette County Prosecuting Attorney's Office, and the various municipal police departments in Lafayette County. The allocation to the highway patrol was apparently in recognition of the patrol's assistance in connection with Lafayette County law enforcement efforts and the apprehension of Weakley and Williams in that county. Most certainly it cannot be said that Saline County was intended as a recipient of the forfeited funds. The only reasonable interpretation of the court's order was to confer upon the county commission of Lafayette County the responsibility and authority to distribute the funds as specified, and with the strongly implied authority to allocate any portion of the funds which a donee or recipient might decline or be unable to receive to another of the three named recipients in Lafayette County. This the county commission did. The purported modification by respondent of the original judgment, made more than six months after that judgment had been entered, is void.

■ Finally, the respondent contends that the Lafayette County Commission was without authority to direct allocation of these monies to the crime fund because that fund was designed only to receive probation restitution payments. The commission had created the crime fund by Resolution 87–1–13 and had provided that supplying the fund with "restitution payments required as a special condition of probation" would "serve a bona fide law enforcement need and purpose and also … reduce the cost and expense to the citizens of Lafayette County." However, contrary to respondent's contentions, this does not mean that the restitution payments were necessarily the exclusive means of supplying the fund, and more importantly, the commission's appropriation to the crime fund was consistent with the declared purpose of Judge Bellamy's final judgment.

Preliminary rule in prohibition made absolute. Respondent's motion to strike relators' reply brief is denied.

All concur.