**James O. GRACE, et al., Individually and on behalf of all others similarly situated, Appellants,**

v.

**ST. LOUIS COUNTY, IESI MO Corp., Veolia Es Solid Waste Midwest, LLC, and Allied Services, LLC, Respondents.**

**No. ED 94746–01.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 13, 2011.

David Thrift Butsch, Butsch, Simeri, Fields, LLC, James Simeri, Clayton, MO, for Appellant.

Patricia Redington, Clayton, MO, for Respondent St. Louis County.

Edward L. Dowd, Jr., Dowd Bennett, LP, Robert Franklin Epperson, Jr., James E. Crowe III, St. Louis, MO, for Respondent IESI.

Brian Edward McGovern, McCarthy, Leonard, Kaemmerer, L.C., James A. Hajek, Chesterfield, MO, for Respondent Veolia ES Solid Waste Midwest, LLC.

Scott James Dickenson, Lathrop & Gage, LC, John Donald Ryan, St. Louis, MO, for Respondent for Allied Services, LLC.

Before GARY M. GAERTNER, JR., P.J., MARY K. HOFF, J. and PATRICIA L. COHEN, J.

## OPINION

PER CURIAM.

James O. Grace, David J. Birtley, Lucille DeGeare, and Ana McDonald, individually and on behalf of all those similarly situated, (collectively referred to as the Residents) appeal from the trial court's judgment dismissing the Residents' class

action petition alleging St. Louis County (the County), IESI MO Corporation, Veolia ES Solid Waste Midwest, LLC, and Allied Services, LLC, (collectively referred to as the Waste Haulers) violated the Hancock Amendment and the Missouri Merchandising Practices Act (MPA) and wrongfully received and retained the Residents' money for services the Residents never requested. After retransfer from the Missouri Supreme Court for reconsideration in light of *Weber v. St. Louis County*, 342 S.W.3d 318 (Mo. banc 2011), we affirm.

### Factual and Procedural History

In December 2006, the County enacted Ordinance No. 23,023, which amended Chapter 607 of the St. Louis County Revised Ordinances (the Waste Management Code). The Waste Management Code required the St. Louis County Executive to establish

> areas within the unincorporated County for the collection and transfer of waste and recovered materials. The boundaries of such areas shall be determined after consideration of factors including size, compactness, road system and other relevant considerations.

Section 607.1300 of the St. Louis County Revised Ordinances (SLCRO). The Waste Management Code also authorized the St. Louis County Executive to advertise for bids or proposals from private or public entities for the provision of services relating to collection and transfer of waste and recovered materials in those areas designated in accordance with Section 607.1300. Section 607.1310.1 SLCRO. The Waste Management Code required contracts to be awarded by order of the St. Louis County Council "to persons that have submitted the most responsible bids or proposals." Section 607.1310.2 SLCRO. Consequently, the County selected waste collectors through a competitive bidding process.

In June 2008, the County contracted with the Waste Haulers to provide solid waste collection services within the areas designated in accordance with Section 607.1300 SLCRO. The Waste Management Code required all residents of unincorporated areas of the County to contract with the Waste Haulers for a "minimum level of service," which was to include once weekly trash pickup service, once weekly recycling collection service, and twice yearly bulk waste pickup service. The Residents were residents of unincorporated St. Louis County.

In October 2009, the Residents filed their Second Amended Class Action Petition (Amended Petition) alleging that the County had violated the Hancock Amendment and that the Waste Haulers had violated the MPA and had wrongfully received and retained the Residents' money based on the 2006 amendments to the Waste Management Code.

In Count I of their Amended Petition, the Residents alleged that they were not required by law to pay for recycling services prior to the 2006 amendments to the Waste Management Code but that, after the 2006 amendments, the Residents were required to make regular quarterly payments to the designated waste hauler for the area in which the Residents lived. The Residents further alleged that the Waste Management Code required the Waste Haulers to report the Residents to the County if the Residents failed to make payment for the weekly pickup of waste materials. The Residents alleged that they would be subject to citation, fines, and imprisonment if they did not pay for recycling service, regardless of whether they requested or used the service. Thus, the Residents alleged, by requiring the Residents to pay for recycling service, the

County imposed a tax that had not been approved by the voters, which was prohibited by the Hancock Amendment.

In Count II of their Amended Petition, the Residents alleged that the Waste Haulers had violated the MPA when they charged the Residents for recycling service regardless of whether they requested or used the service. The Residents alleged that the Waste Haulers' actions under the Waste Management Code constituted deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of material facts in connection with the sale or advertisement of merchandise under the MPA. The Residents alternatively alleged that the Waste Management Code's definition of "waste" did not include "recovered materials," and, therefore, the Waste Haulers had no authority to require the Residents to pay for recycling service they did not want.

In Count Three of their Amended Petition, the Residents alleged that the Waste Haulers had unjustly accepted and retained the Residents' payments for recycling service they never requested and paid "under involuntary compulsion, and under threat of criminal charges."

The County and the Waste Haulers subsequently filed their motions to dismiss the Amended Petition. Both the County and the Waste Haulers alleged that the Residents' Amended Petition should be dismissed for failure to state a claim.

In March 2010, the trial court entered its judgment dismissing the Residents' Amended Petition with prejudice and finding that the charges for recycling service described in the Amended Petition were not taxes under the Hancock Amendment. The trial court's judgment did not directly address the Residents' claims asserted against the Waste Haulers. This appeal followed. After we transferred this case to the Missouri Supreme Court pursuant to Rule 83.02, the Missouri Supreme Court retransferred this case for reconsideration in light of *Weber v. St. Louis County*, 342 S.W.3d 318 (Mo. banc 2011).

## Standard of Review

We review the trial court's grant of a motion to dismiss *de novo*. *Huch v. Charter Communications. Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009); *Moynihan v. Gunn*, 204 S.W.3d 230, 232–33 (Mo. App. E.D.2006). When reviewing the dismissal of a petition for failure to state a claim, we treat the facts contained in the petition as true and construe them liberally in favor of the plaintiffs, granting the plaintiffs all reasonable inferences therefrom. *Huch*, 290 S.W.3d at 724; *Moynihan*, 204 S.W.3d at 233.

## Discussion

The Residents present three points on appeal. For ease of analysis, we address the points out of the order in which they were presented.

In their third point on appeal, the Residents claim that the trial court erred in dismissing the first count of their Amended Petition because the Residents properly alleged a claim under the Hancock Amendment in that the Hancock Amendment prohibits the imposition of a new tax without a vote of the persons affected. The Residents argue that the County imposed a new tax without a vote of the persons affected in the form of a mandatory fee for recycling service that must be paid by the Residents on a periodic basis, regardless of actual use.

The Hancock Amendment provides, in pertinent part

Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized

by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon.

Mo. Const. article 10, Section 22(a).

■■■ Only total state revenues are subject to the Hancock Amendment. *In re Tri–County Levee Dist. v. Missouri Hwy. and Transp. Commission*, 42 S.W.3d 779, 785 (Mo.App. E.D.2001). "To qualify as total state revenues, (1) the funds must be received into the state treasury, and (2) the funds must be subject to appropriation." *Tri–County Levee Dist.*, 42 S.W.3d at 785. "[T]he Hancock Amendment applies only to revenue increases that are in fact tax increases, whether labeled taxes, licenses, or fees." *Id.* "Revenue increases which are in fact fees for services rendered in connection with specific services ordinarily are not taxes unless the object of the requirement is to raise revenue to be paid into the general fund of government." *Id.*

■■■ Taxes are "proportional contributions imposed by the state upon individuals for the support of government and for all public needs." *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 875 (Mo. banc 1960) (quotations omitted). "Taxes are not payments for a special privilege or a special service rendered." *Leggett*, 342 S.W.2d at 875 (quotations omitted). "Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes, unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray custom-

ary governmental expenditures, rather than compensation of public officers for particular services rendered." *Id.* (internal quotations omitted); *see also President Riverboat Casino–Missouri, Inc., v. Missouri Gaming Commission*, 13 S.W.3d 635, 638 (Mo. banc 2000) (Supreme Court found admission fees gambling boat operators paid directly to the State, which were deposited into the State's general revenue fund, were taxes under definition in *Leggett*).

■■■ Here, we find that the fee for recycling service, which was included in the waste removal bill, was not subject to the Hancock Amendment because that fee was not a tax. The fee was not paid to the County and was not subject to appropriation. The Waste Haulers, not the County, provided this service to the Residents. The Waste Management Code authorized the elected officials of the County to select the Waste Haulers to provide a minimum level of waste hauling service to the Residents, which included recycling service, but the actual amount of the fee the Residents paid was determined by the level of service actually provided. Furthermore, the Waste Haulers were *not* the agent or instrumentality through which the County charged fees for waste removal. *Compare Loving v. City of St. Joseph*, 753 S.W.2d 49, 50 (Mo.App. W.D.1988) (not-for-profit corporation acted as agent of municipality when it collected fees from residents for use of property owned by municipality and remitted a portion of fees to municipality). The fee for this service did not generate any increase in revenue for the County but was paid directly to the Waste Haulers for the cost of the service they provided. Moreover, "[t]he Hancock Amendment, in order to keep the public burden of taxation under control, does not prohibit [the County] from shifting the burden to the private users of these services." *Keller v. Marion*

*County Ambulance Dist.*, 820 S.W.2d 301, 304 (Mo. banc 1991); *see also Arbor Investment Company, LLC v. City of Hermann*, 341 S.W.3d 673, 678–80 (Mo. banc 2011). The County is authorized to provide services through ordinances for the benefit of the public's safety, health, and welfare. This fee was paid to a private entity for services rendered and provided no revenue to the County. *See Keller*, 820 S.W.2d at 304.

■ Although the Residents contend that we must apply the five factors from *Keller*, 820 S.W.2d at 304 n. 10 [1], to determine whether the recycling fee, which was part of the waste removal bill, was subject to the Hancock Amendment, we disagree with the Residents' threshold argument. Under *Keller*, because this fee was not a "revenue increase by a local government" in the first instance, it was not a tax and did not require voter approval under the Hancock Amendment. Therefore, a *Keller* analysis is not necessary. However, even if we were to apply the five factors in this case, the criteria weigh against a finding that the fee was a tax. Here, the Waste Haulers charged individual residents for various levels of service ranging from $34.80 to $40.50. The fee was billed to only those residents within the unincorporated sections of the County who received the benefit of this service provided by the designated waste hauler for the area within which those residents lived. Although the Waste Management Code required the Residents to contract with the Waste Haulers for a "minimum level of service," including once weekly trash pickup service, once weekly recycling collection service, and twice yearly bulk waste pickup service, the amount of the fee was directly related to the level of service the Waste Haulers provided to individual residents. The fees were not paid to the County or received in the County treasury but paid directly to the Waste Haulers. The Waste Haulers were private entities unconnected to the County and were selected through a competitive bidding process under the Waste Management Code. The competitive bidding process was intended to secure the "most responsible bids or proposals." Section 607.1310.2 SLCRO. The Residents did not allege that the recycling service had been either historically or exclusively provided by the County, and the record is devoid of any indication that the County provided this service prior to the enactment of the Waste Management Code. Thus, even under a *Keller* analysis, this is not a tax.

Consequently, because the fee for waste removal, including recycling service, did not constitute a tax, no Hancock violation occurred; thus, the trial court did not err in dismissing the first count of the Residents' Amended Petition for failure to state a claim. Point denied.

■ In the Residents' first point on appeal, they claim the trial court erred in dismissing the second count of their Amended Petition alleging that the Waste Haulers engaged in unlawful practices un-

---

1. According to *Keller*, Missouri courts apply five factors to determine whether a revenue increase by a local government is an increase in a tax, a license, or a fee that requires voter approval under the Hancock Amendment: (1) when the fee is paid; (2) who pays the fee; (3) whether the amount of the fee to be paid is affected by the level of goods or services provided to the fee payer; (4) whether the government is providing the goods or services; and (5) whether the activity in question has historically and exclusively been provided by the government. *Id.* at 304 n. 10. Although no specific criterion is independently controlling, the five factors are helpful in examining charges denominated as something other than a tax. *Id.* "[T]he criteria together determine whether the charge is closer to being a 'true' user fee or a tax denominated as a fee." *Id.*

der the MPA by (1) charging the Residents a fee for recycling service that the Residents did not solicit; (2) charging the Residents for recycling service when the Waste Management Code only allowed charging for waste collection; and (3) charging the Residents for recycling service pursuant to an ordinance that violated the Hancock Amendment. We disagree with the Residents' assertions. First, the waste hauling service, which included recycling provided by the Waste Haulers to the Residents, was solicited by the County on behalf of the Residents pursuant to the Waste Management Code. Second, the Waste Management Code must be viewed as a whole rather than in individual segments. Numerous sections in the Waste Management Code incorporate recycling as part of waste removal or waste management. *See* Sections 607.040.24, 607.040.36, 607.040.44, 607.040.45, 607.040.46, 607.040.53, 607.040.57, 607.050, 607.060, 607.120, 607.145, 607.181, 607.183–.185, 607.190, 607.200, 607.970–.973, 607.1200, 607.1203, 607.1205, 607.1300, and 607.1310 SLCRO. The Waste Management Code did not prohibit charging the Residents for recycling; rather, the Waste Management Code specifically allowed the Waste Haulers to charge a reasonable fee for recycling service as part of waste hauling. *See* Section 607.183 SLCRO. Third, given our determination that the fee for this service was not subject to the Hancock Amendment, the Residents' derivative argument regarding unfair practices under the MPA is without merit. Point denied.

■ In the Residents' second point on appeal, they essentially claim the trial court erred in dismissing the third count of their Amended Petition, which alleged a claim for money had and received, on the ground that the Waste Haulers improperly collected and unjustly retained the fees for recycling services that the Residents did not request. This is a similar argument to the MPA claims under the Residents' second point. We reject this argument for the same reasons previously noted. Point denied.

*Conclusion*

We affirm the trial court's Judgment.